THE PEOPLE OF THE STATE OF NEW YORK ex rel. ANONYMOUS, by Her Guardian ad Litem, Appellant, *v.* ANONYMOUS et al., Respondents.

Second Department, June 26, 1961.

Benjamin Heller of counsel (Harry H. Lipsig, attorney), for appellant.

David G. Lubell and Raymond Reisler of counsel (Lubell & Lubell, attorneys), for respondents.

*Per Curiam.* The relator is the natural mother of a child born out of wedlock, on February 10, 1957. In this habeas corpus proceeding she seeks to obtain the custody of her child from the respondents, a married childless couple, who received the baby four days after his birth, with a view to adoption.

The Justice at Special Term dismissed the writ, holding that the relator had abandoned the child; that at the time of the decision she was unfit to have custody; and that the welfare of the child was best served by such disposition.

Relator admits that when she was 13 years of age she had sexual relations with two boys, with one of them for about two months. There was also evidence that a third boy, now her husband, also engaged her in such relations. At the time relator became pregnant she was living at home with her father and mother. When the news of the prospective birth of the baby was given to the family, the father was insistent that the relator should not keep the child. The father made arrangements with the respondents for the delivery of the child to them at the time that the relator would leave the hospital.

Relator contends that such arrangement was made against her will completely and over her strong protest; and the record is replete with testimony to this effect, not only by relator but by other witnesses as well. As to the relator's participation in the actual transfer of the child, there is conflicting testimony. She says she took no part in it; others say she did. Her father gave her no information as to who the respondents were or as to where they were, and she claims she had no way of discovering the whereabouts of her child. Three months after the baby was born, the relator married, being then 15 years of age. Eleven months after the baby's birth, relator's father died.

The matter remained quiescent until August, 1959, when a lawyer representing respondents wrote two letters to relator's mother with respect to the respondents' adoption of the baby. The mother in her reply made it clear that relator had wanted to keep the baby, that relator still talked about it, that she had not "forgiven or forgot." The letter also stated that the relator "still asks about the baby and this is a bad time to ask her to sign nor open a sore wound." The second letter from the lawyer asked the mother to talk with the relator "when you think you can". When the relator was told of these letters, it was her first information as to the whereabouts of her child. On February 17, 1960, when the child was three years old, this proceeding was commenced.

Except for a short period or periods of separation in 1958, relator and her husband have been living together since their marriage. Evidence was adduced that for a period of time during such separation relator committed many sexual acts with another man; and that in 1960, when served with process in a proceeding by these respondents for adoption of the child, she called the process server vile names. Such testimony was contradicted by her. Her version as to improper relations with the other man was that their physical acts did not go further than kissing, and his putting his arms around her.

The proof shows that the relator and her husband now get along very well with each other; that they maintain a proper home in a rented bungalow, and are regular church attendants; and that he is steadily employed and wants to treat the child as his own.

Testimony was also given by three psychiatrists to the effect that it would be deleterious to the child to remove him from the custody of respondents, and one psychiatrist testified to the contrary.

This proceeding being one between a parent and nonparents, we must consider both the best interests of the child and the parent's rights. The law of this State is that the parent should prevail, unless it be established: (1) that the parent has abandoned the child or is unfit to assume the duties and privileges of parenthood, and (2) that the child's welfare compels awarding custody to the nonparents; and the burden of proof is on the nonparents (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465, 468–470). A finding of abandonment is not warranted unless the parent may be said to have renounced the child. Such renunciation must be positively established with clearness and certainty in the **proof** (*Matter of Bistany,* 209 App. Div. 286,

affd. 239 N. Y. 19; see, also, *Matter of Maxwell*, 4 N Y 2d 429, 433).

In our opinion, the evidence did not warrant the finding of the learned Justice at Special Term that relator had abandoned the child. She herself was but a child when her infant was given to respondents; she was then under the complete subjection of an unyielding father; and her resistance and objection went for naught. Although relator allowed a considerable period of time to elapse before she took any action to locate the child and to regain custody, we believe there were mitigating factors for her temporary inaction. She did not know where the child was or how to go about finding it, and when she learned of the respondents she proceeded to reclaim her child.

We do not agree with the Special Term's finding that the relator was unfit to raise her child. Fitness means present or prospective fitness, and " the courts may not weigh too heavily indiscretions of long ago " (*People ex rel. Kropp* v. *Shepsky*, 305 N. Y. 465, 470–471, *supra*). The evidence of sex acts committed in 1958 by relator with a man other than her husband, consisted solely of the testimony of that man. From his testimony it was patent that, even if the relator indeed were guilty, the affair did not cover as long a period of time as he claimed it did. Moreover, this witness was an unsavory character. At the time of the trial he was serving a sentence on a conviction of attempted assault on another girl, a crime committed while he was separated from his wife and children. He had volunteered himself to respondents as a witness. As to his motive, it is noted that he admitted having received a terrible physical beating by the relator's husband and her brother.

Perhaps, as the Special Term reasoned, a mother's indifference toward finding and recovering her child or taking any steps in that direction, may indicate unfitness. We do not think so in the circumstances of this case. Based upon all the proof, we believe that the respondents did not sustain their burden of showing relator's present or prospective unfitness to have her child.

With respect to the remaining question as to the welfare of the child, we again find ourselves in disagreement with the Special Term. It appears reasonable to conclude from the proof that at no time since the birth of the child did the respondents have a right to believe that the relator would consent to their adoption of the child. Now, in view of our finding that the relator did not abandon the child, it appears that, even if

the child were to be permitted to remain with the respondents, they would not be able to succeed in a proceeding to adopt the child, unless new and pertinent factors entered the situation (see Domestic Relations Law, § 111). To permit the child to remain with respondents under these circumstances may well have harmful effects upon him.

We are not unmindful of the opinions of the psychiatrists who testified for the respondents; but we also note that in *Matter of Jewish Child Care Assn. of N. Y. (Sanders)* (5 N Y 2d 222, 227), despite similar testimony by a psychiatrist with respect to a five and a half-year-old child who had lived with a couple for the last four and a half years, a finding was approved that it would be in the child's best interests if she were taken from the couple before " ' further damage is done or a still more difficult situation for her is created '."

The order, insofar as appealed from, should be reversed on the law and the facts, without costs; the writ of habeas corpus should be sustained; and respondents should be directed to return the child to the relator on the 20th day after entry of the order hereon, or on any other date which the parties may stipulate in writing.

Findings of fact which are inconsistent herewith should be reversed and new findings should be made as indicated herein.

KLEINFELD, CHRIST, PETTE and BRENNAN, JJ., concur in *Per Curiam* opinion, NOLAN, P. J., dissents and votes to affirm, in the following memorandum: The learned Justice at Special Term, on consideration of all the evidence, determined: (1) that relator had abandoned her child and was unfit to assume the duties of parenthood, and (2) that the child's welfare compels the award of custody to the respondents. Such determination is supported by substantial evidence; hence, it should not be disturbed (cf. *Boyd* v. *Boyd,* 252 N. Y. 422, 429).

Order, insofar as appealed from, reversed on the law and the facts, without costs; writ of habeas corpus sustained; and respondents directed to return the child to the relator on the 20th day after entry of the order hereon, or on any other date which the parties may stipulate in writing.

Findings of fact inconsistent with such opinion are reversed, and new findings are made as indicated therein.